John MASTROBUONO et al.

v.

The PROVIDENCE REDEVEL-
OPMENT AGENCY OF THE
CITY OF PROVIDENCE.

No. 2003–156–Appeal.

Supreme Court of Rhode Island.

June 10, 2004.

William Landry, Esq., for Plaintiff.

Alfred G. Thibodeau, Esq., for Defendant.

Present: WILLIAMS, C.J., and FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

PER CURIAM.

## OPINION

The defendant, the Providence Redevelopment Agency of the City of Providence (the city), appeals from a Superior Court judgment awarding the plaintiffs, John and Carol Mastrobuono (collectively referred to as plaintiffs), $245,750 for the condemnation of their property. The city contends that the trial justice erred in accepting the plaintiffs' expert's valuation of the plaintiffs' property because the expert's opinion was speculative, was unsupported by adequate foundational facts and failed to account for developmental costs in transforming the property into what the plaintiffs' expert testified was its highest and best use as a restaurant. The city also argues that the trial justice erred by failing to base his finding of fair market value on certain sales described at trial. Finally, the city complains that the trial justice improperly inflated the value of the subject property based on its relative age compared with that of a comparable sale property. After reviewing the record, we discern no error in the trial justice's findings and affirm the judgment of the Superior Court.

This case came before the Supreme Court for oral argument on March 8, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and proceed to decide the appeal at this time.

## I

### Facts and Travel

The plaintiffs were the owners of a two-story cinderblock building located at 63 DePasquale Plaza in the Federal Hill section of the City of Providence (subject property). Before it was taken by the city through the exercise of its eminent domain power in September 1997, the subject property was used for light jewelry manu-

facturing. The plaintiffs brought suit against the city seeking just compensation for the property. Thereafter, the city paid plaintiffs $160,000, but plaintiffs complained this amount was inadequate and continued their attempt to recover additional money.

At trial, plaintiffs' expert appraiser, Joseph Accetta (Accetta), offered his opinion about the fair market value of the subject property. He said that the highest and best use for plaintiffs' property would be a restaurant because of the unique characteristics of the DePasquale Plaza area. In forming his opinion about the property's value, Accetta looked at three recent sales of property in and near DePasquale Plaza. For all three properties, Accetta made numerous adjustments based on, among other things, differences in size, condition, and age to arrive at a valuation of plaintiffs' property in comparison with the other sales. Accetta said that he arrived at the adjustment figures based on his extensive experience in appraising, owning, and renting properties similar to the comparable sale properties.

The city's two expert appraisers, A. Augustine Andolfo (Andolfo) and Richard Jalbert (Jalbert), offered their opinions about the fair market value of the subject property. Andolfo and Jalbert, however, did not restrict their survey of comparable sales to buildings in the DePasquale Plaza area. In fact, none of their supposed comparable sale properties was in that immediate area.

In a bench decision, the trial justice determined that the unique qualities of DePasquale Plaza limited the relevant pool of comparable sales to those involving nearby buildings used as "restaurants, food service establishments, and secondary urban apartment dwellings for temporary and long-term residence * * *." Consequently, the trial justice disregarded the opinions of the city's experts because neither of them based their opinions "on sales in the relevant real estate market in terms of location and use."

The trial justice based his finding of fair market value on figures Accetta derived from a recent sale of a building that, at the time of trial, housed a restaurant known as Venda Ravioli (Venda building). The trial justice concluded that the Venda building was the most comparable property to the subject property because the buildings were only a few feet from each other and the Venda building had been sold only one month before plaintiffs' property was taken. The Venda building sold for $320,000; at the time of the sale it was not used as a restaurant. Making appropriate adjustments, Accetta opined that the fair market value of the subject property was $273,250 at the time of its taking and the trial justice initially accepted that determination. Upon consideration of the city's motion for new trial, however, the trial justice indicated that he had erred in his valuation of the subject property because he failed to account for the fact that the subject property was smaller than the Venda building. Accordingly, the trial justice reduced the judgment by $27,500, to $245,750. The city timely appealed.

## II

### Discussion

■ "When reviewing the decision of a trial justice sitting without a jury in a land-condemnation proceeding, this Court accords great weight to the trial justice's findings. Consequently, we shall not disturb such findings on appeal unless it is demonstrated that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong." *Serzen v. Director of the De-*

*partment of Environmental Management*, 692 A.2d 671, 675 (R.I.1997).

■ Article 1, section 16, of the Rhode Island Constitution provides that "[p]rivate property shall not be taken for public uses, without just compensation." "It is well settled that the measure of damages to be awarded as just compensation for the condemnation of private property is the fair-market value of the property as of the date of the taking." *Serzen*, *692 A.2d at 673*. "[E]vidence of comparable sales is the preferred indicator of fair market value." *Sweet v. Town of West Warwick*, 844 A.2d 94, 98 (R.I.2004).

"The comparable sales methodology assumes that the best estimates of the market value of a property can be determined by analyzing recent sales in the open market during a similar timeframe for substantially similar or comparable properties, and making adjustments for minor differences between the properties or the circumstances of the sales. * * * Significant factors for review include 'location and character of the property, proximity in time of the comparable sale, and the use to which the property is put.'" *Sun–Lite Partnership v. Town of West Warwick*, 838 A.2d 45, 47 (R.I.2003) (per curiam) (quoting *Serzen*, *692 A.2d at 674)*.

■ First, the city contends that the trial justice erred in accepting Accetta's appraisal because Accetta failed to analyze the marketability and feasibility of transforming the subject property into a restaurant and accounting for development costs for such an endeavor. To support its argument, the city relies on this Court's decision in *Gorham v. Public Building Authority of Providence*, 612 A.2d 708 (R.I.1992). In that case, we held that a trial justice improperly accepted an appraiser's valuation of a condemned property because the expert failed to consider development costs and conduct a marketability and feasibility analysis. *Id.* at 717. The absence of such foundational information rendered the expert's opinion speculative. *Id.*

But this case is distinguishable from *Gorham*. The trial justice derived his finding of the value of the subject property by looking to the sale price of the Venda building, which was only feet from the subject property. Importantly, as the trial justice noted, the Venda building was sold just one month before this taking occurred. Also, at the time the Venda building was sold, it was not yet used as a restaurant. Therefore, the sale price of the Venda building constituted an approximation of the marketability, feasibility and development costs necessary to transform the subject property into a restaurant. Thus, Accetta's testimony was supported by the requisite foundation and the trial justice was justified in relying on it.

■ The city also argues that Accetta's opinion as to the value of the subject property depended on adjustments that were of such a magnitude as to render his opinion unreliable. Further, according to the city, Accetta improperly drew upon his experience to make adjustments without providing sufficient facts to support his opinion. "An expert's opinion about the value of buildings that is based solely on the expert's experience in evaluating property is entitled to no weight in the absence of any specific reasons or factors for arriving at such an opinion." *Gorham*, 612 A.2d at 717. If an expert is presented to establish the value of a building, the expert could "present[ ] the court with a report of the sales of comparable properties and a breakdown depicting how much of the purchase price was allocated to the land and how much to the buildings." *Nasco, Inc. v. Director of Public Works for the State of*

*Rhode Island,* 116 R.I. 712, 721, 360 A.2d 871, 876 (1976).

In this case, Accetta made adjustments to his comparable sales figures to accommodate for differences in age, size and condition. When questioned about the adjustments, he said that the adjustment figures were based on his experience owning, selling, renting, and appraising properties of the same type. As an expert appraiser, Accetta properly could draw upon his knowledge and experience in making such adjustments. Indeed, "the appraisal process is designed to adjust for the differences between properties in order that valuations of dissimilar properties may be compared." *Sun–Lite Partnership,* 838 A.2d at 48. As described above, the condition and sale of the Venda building provided sufficient foundation for Accetta to base his adjustments. Recognizing the dissimilarities between the comparable properties and the subject property discussed by Accetta, the trial justice was within his discretion to base his finding of the fair market value of the subject property on Accetta's testimony.

█ Next, the city argues that the trial justice erred by failing to base his finding of fair market value on other sales that Accetta and Andolfo described. However, the record indicates that the trial justice expressly articulated his reasons for discounting evidence drawn from those sales. Given the uniqueness of the DePasquale area, the trial justice was justified in basing his finding of fair market value only on sales of buildings in that immediate vicinity.

Finally, the city complains that the trial justice erred by accepting Accetta's appraisal because Accetta's valuation included an age adjustment, despite the fact that the trial justice initially said that age was not a material factor considered by any of the appraisers. In deciding the defendant's motion for new trial, however, the trial justice specifically discussed the effect that age could have on the value of the subject property. Therefore, it is clear that the trial justice considered the effect that age would have on fair market value, and the amended judgment did account for differences in age between the Venda building and the subject property. Therefore, we will not disturb the trial justice's finding of fact on appeal.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court awarding the plaintiff $245,750 in damages. Prejudgment interest shall be calculated in accordance with G.L.1956 § 45–32–50. The record shall be remanded to the Superior Court.